**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| William Hayes, Jr.,<br><br>Petitioner,<br><br>v.<br><br>Charles Ryan, et al.,<br><br>Respondents. | No. CV-16-00337-TUC-JAS (DTF)<br><br>**REPORT AND RECOMMENDATION** |

Petitioner William Hayes, Jr. (Petitioner), presently incarcerated at the Arizona State Prison Complex – Central Arizona Correctional Facility, in Florence, Arizona, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Petition). Pursuant to the Rules of Practice of the Court, this matter was referred to Magistrate Judge Ferraro for Report and Recommendation. Before the Court are the Petition and Respondent's Limited Answer to Petition for Writ of Habeas Corpus. (Docs. 1 and 8.) The Magistrate Judge **recommends** that the District Court, after its independent review of the record, **dismiss** the Petition.

## Background

The Arizona Court of Appeals determined the facts as follows:

> In June 2011, Hayes stopped S.W. as she was walking down the street, persuaded her to enter his vehicle and drove around with her for a while before ultimately taking her to a park. Once there, Hayes threatened to shoot S.W., touched her breasts, and penetrated her vagina. She later identified Hayes in a photographic lineup, and his

DNA was found on a swab taken from S.W.'s vagina.

In November 2011, C.M. was involved in an automobile collision and went to a nearby convenience store to use a telephone. While there, she met Hayes, who told her he knew an attorney who could help her and she could use his telephone. Hayes and C.M. went to his apartment, but once inside Hayes showed her a gun, pushed her down, licked her vagina, touched her breasts, and penetrated her vagina with his penis. Hayes' DNA was found in swabs taken from C.M.'s vagina and abdomen.

In April 2012, B.R. met Hayes and went with him to his apartment. There, Hayes pushed B.R. down on a couch. Removed her clothing, and attempted to penetrate her with his penis. He then spit on one or more of his fingers and inserted them into her vagina. B.R. eventually escaped and called 9-1-1. She showed officers the apartment and identified Hayes before going to the hospital and being examined by a nurse. Police later searched the apartment and found methamphetamine and drug paraphernalia.

Hayes was charged with sexual assault, kidnapping, possession of a dangerous drug, and possession of drug paraphernalia in relation to the sexual assault of B.R. He was also charged with attempted sexual assault and sexual abuse of B.R.; sexual abuse, kidnapping, and two counts of sexual assault of C.M.; and kidnapping, sexual assault, and sexual abuse of S.W.

In July 2012, while in the county jail, Hayes transferred money to Bridgett Miller, whom B.R. testified she had seen on the bus, and apparently sought to have Miller influence B.R. not testify against him. Hayes was charged in a separate cause number with attempted tampering with a witness, and that charge was consolidated with the others for trial.

The jurors became deadlocked on some of the counts, but found Hayes guilty on six counts – the drug counts, the witness tampering count, and the charges relating to the sexual assault of B.R. – and not guilty on the count of sexual abuse of B.R. The remaining counts were set for a new trial, which proceeded without objection. Hayes was convicted on the remaining counts at that trial, and the trial court

> sentenced him to presumptive, consecutive and concurrent prison terms, totaling 31.5 years.

(Doc. 8 at Ex. A. at p. 1, ¶¶ 2-7.) (Footnotes omitted.)

Petitioner timely appealed and the Arizona Court of Appeals affirmed. (*Id*. at Ex. A.) The Arizona Supreme Court denied Petitioner's petition for review. (*Id*. at Ex. B at p. 7.) Thereafter, Petitioner timely filed a notice of post-conviction relief (PCR) and was assigned counsel. (*Id*. at Ex. C.) Petitioner's court appointed counsel filed a petition for PCR asserting three claims of ineffective assistance of counsel. (*Id*.) The trial court determined Petitioner's claims were without merit and dismissed his PCR petition. (*Id*.) Thereafter, Petitioner petitioned the Arizona Court of Appeals for review. (*Id*. at Ex. D at ¶ 1.) The court of appeals determined the trial court had "clearly identified the claims [Petitioner] had raised and resolved them correctly in a thorough, well-reasoned minute entry." (*Id*. at ¶ 5.) No petition for review in the Arizona Supreme Court was filed. (*Id*. at Ex. E at p. 2.)

**The Petition**

Petitioner timely filed the instant Petition asserting three grounds for relief. In Ground One, Petitioner alleges that his trial counsel was ineffective by inadequately preparing for trial. (Doc. 1 at p. 6.) In Ground Two, Petitioner alleges is trial counsel failed to "secure an expert[] or otherwise prepare for testimony[.]" (*Id*. at p. 7.) In Ground Three, Petitioner alleges that his trial counsel's "deficient performance caused [him] to be denied his Fifth Amendment right to have his trial completed by a particular jury as to Count[s] 8 and 9 of the Indictment." (*Id*. at p. 8.) Petitioner presented all three grounds for relief in the trial court as well as the court of appeals. (Doc. 8 at Exs. C, D, and E.)

As more fully explained below, Petitioner fails to establish that he is entitled to habeas relief under either the "contrary to" clause or "unreasonable application" clause of 28 U.S.C. § 2254(d)(1).

…

Legal Standard

The Petition is governed by the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. Under the AEDPA, the Court "must defer to the state court's resolution of federal claims," *Delgadillo v. Woodford*, 527 F.3d 919, 924 (9th Cir. 2008), and may grant habeas relief only if the state court's decision is:

> (1) contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The United States Supreme Court explained:

> Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

In determining the state court's resolution of federal claims, a habeas court reviews the last reasoned state-court decision. *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005). When a state court does not explain the reason for its decision, a habeas court will "look through" to the last state court decision that provided a reasoned explanation capable of review. *Shackleford, v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000). Here, the Arizona Court of Appeals adopted the trial court's resolution of Petitioner's claims. (Doc. 8 at Ex. D at ¶ 5.) Accordingly, the last reasoned decision of the state court is the state court's denial of Petitioner's claims during his PCR proceedings. (*Id*. at Ex. C.)

The State Court's Decision was not Contrary to Clearly Established Federal Law

As mentioned above, a federal habeas court may issue a writ of habeas corpus under the "contrary to" clause only if the state court applies a different rule from the governing law set forth in Supreme Court cases, or if it decided a case differently than the Supreme Court has done on a materially indistinguishable set of facts. *Williams*, 529 U.S. at 405-06. The standards for review of an ineffective assistance of counsel claim under *Strickland v. Washington*, 466 U.S. 668, 694 (1984) require a petitioner to establish that (1) "counsel's performance was deficient," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

Here, in resolving Petitioner's PCR petition the state court correctly applied *Strickland*. (Doc. 8 at Ex C at p. 3 ("To establish a claim of ineffective assistance of counsel warranting relief, a defendant must show that counsel's actions fell below objective reasonableness and that counsel's deficient performance was prejudicial. *Strickland v. Washington*, 466 U.S. 668 (1984)[.]").) Additionally, there is nothing before the Court from which it can conclude that the state court decided Petitioner's case differently than the Supreme Court has done on a set of materially indistinguishable facts. (*See* Doc. 1.) Accordingly, the Court determines that Petitioner is not entitled to habeas relief under the "contrary to" clause of § 2254(d).

The State Court did not Unreasonably Apply Clearly Established Federal Law

"[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 410. This Court's review of the state court's decision under § 2254(d)(1) is "particularly deferential to [its] state court colleagues." *Taylor v. Maddox*, 366 F.3d 992, 999-1000 (9th Cir. 2004),

*abrogated on other grounds by Murray v. Schriro*, 745 F.3d 984 (9th Cir. 2014). In *Harrington v. Ritcher*, the United States Supreme Court held:

> The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' […] and when the two apply in tandem, review is 'doubly' so […] The *Strickland* standard is a general one, so the range of reasonable applications is substantial. […] Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

562 U.S. 86, 106 (2011). (Internal citations omitted.) An *unreasonable* application of federal law is different from an *incorrect* application of federal law. *Williams*, 529 U.S. at 410. (Emphasis in original.) "Even a strong case for relief does not mean that the state court's contrary conclusion was unreasonable." *Richter*, 562 U.S. at 102. *Richter* held:

> Under § 2254(d), a habeas court must determine what arguments or theories supported or […] could have supported[] the state court's decision; and then it must ask whether it is possible fair[-]minded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court.

*Id*. *See also Murray v. Schriro*, 745 F.3d 984, 996 (9th Cir. 2014) ("To assess whether a petitioner has met this burden, we must ask 'what arguments or theories supported or … could have supported the state court's decision,' and determine 'whether it is possible fair[-]minded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of' the Supreme Court.")

*Ground One*: As mentioned above, Petitioner alleges in Ground One that he received ineffective assistance of counsel when his trial counsel failed to adequately prepare for trial. (Doc. 1 at p. 6.) Examination of the state court's order rejecting Petitioner's claim leads this Court to conclude that the state court

reasonably applied *Strickland*'s guidance that strategic decisions are reasonable, to the extent they are supported by "reasonable professional judgment." *See Strickland*, 466 U.S. at 690-91. The trial court determined:

> First, Petitioner argues that due to inadequate trial preparation, trial counsel failed to adequately cross-examine B.R. or recall her to counter testimony by the nurse who examined her.
>
> This satisfies neither prong of *Strickland*. Petitioner fails to point out any way in which trial counsel's preparation was inadequate. Nor does he overcome the strong presumption that trial counsel made this decision for strategic reasons. It is feasible that trial counsel may have wanted to approach cross-examination of an alleged victim of sexual assault delicately and point out any inconsistencies in her testimony in closings in lieu of direct confrontation. Trial counsel did, in fact, point to the discrepancies in B.R.'s statements in closings in order to argue that B.R's version of events was not credible or believable. Trial counsel may have decided not to recall B.R. for the same reason.
>
> Furthermore, in Petitioner' statement to police, he admitted that he had penetrated B.R. with his finger. The State did not use the statement at trial because Petitioner did not dispute that the acts occurred. Petitioner's DNA was found on all three victims. Rather, Petitioner urged the acts were consensual. However, had trial counsel confronted B.R. in order to elicit more definite testimony that Petitioner never penetrated her with his finger, the State might have introduced Petitioner's own statement to police. Additionally, although arguing consent did not legally preclude trial counsel from arguing that the evidence did not prove penetration, she may nonetheless have determined that making both arguments would undermine the consent defense.
>
> Petitioner also fails to demonstrate prejudice resulting from trial counsel's conduct. Petitioner argues that if trial counsel had effectively cross-examined B.R. or recalled her to counter Nurse Crocker's testimony, B.R. would have testified that her statements to Nurse Crocker were incorrect, and as a result, the trial court would have granted Defendant's Rule 20 motion.

> Rule 20 of the Arizona Rules of Criminal Procedure directs a court to enter a judgment of acquittal on one or more offenses charged in an indictment, information or complaint after the evidence on either side is closed 'if there is no substantial evidence to warrant a conviction.' A conflict between the testimony of two witnesses does not preclude a jury from finding a person guilty beyond a reasonable doubt. Rather it is not the jury to assess the credibility of witnesses. Given that B.R.'s statement to Nurse Crocker occurred much closer in time to the assault, a jury could reasonable find that statement to be the more credible of the two.
>
> Furthermore, the Court of Appeals rejected Petitioner's argument that based on B.R.'s testimony at trial, there was insufficient evidence to sustain his conviction for sexual assault of B.R. If there was sufficient evidence to convict, there was sufficient evidence to deny Petitioner's Rule 20 motion and send the case to the jury.
>
> Ultimately, further examination of B.R. regarding her statements to Nurse Crocker would not have brought to light new exculpatory information not present in the record when the trial court ruled on Petitioner's Rule 20 motion. Rather it would not serve to highlight a conflict in testimony already in the record. Accordingly, there is not a reasonable probability that, but for this alleged error, the trial court would have granted Petitioner's Rule 20 motion.

(Doc. 8 at Ex. C. at pp. 3-4.)

The state court's analysis in its order denying Petitioner's PCR petition is not an unreasonable application of *Strickland*. Accordingly, Petitioner is not entitled to habeas relief on Ground One of his Petition.

*Ground Two*: As stated above, Petitioner alleges in Ground Two that his trial counsel failed to secure an expert or prepare for trial testimony concerning toluidine blue dye uptake to discover microscopic injuries. (Doc. 1 at p. 7.) An examination of the trial court's order rejecting Petitioner's claim establishes that the trial court reasonably applied *Strickland*'s guidance that strategic decision are reasonable, to the extent they are supported by "reasonable professional

judgment." *See Strickland*, 466 U.S. at 690-91. The trial court determined:

> Trial counsel's decision not to secure an expert to testify regarding the use of toluidine blue dye could have been a strategic or tactical decision. Petitioner states in his Petition that '[h]ad the jury received correct information about toluidine dye uptake, the abrasion to the victim's labia minora would have had little impact and would not have supported nurse Crocker's hearsay testimony which contradicted the victim's unequivocal testimony that no penetration occurred.' Trial counsel may have chosen not to challenge Nurse Crocker's testimony for the same reason she chose not to confront B.R. about her previous statements to Nurse Crocker. The purpose of calling an expert to testify about the application of toluidine blue dye would have been to support B.R.'s statement that Petitioner did not penetrate her with his finger. Thus, trial counsel may have determined that such testimony would undermine the consent defense and risk the State introducing Petitioner's own admissions to the police.
>
> Petitioner also cannot show that he was prejudiced by this decision. At trial, Nurse Crocker testified that toluidine blue dye uptake would only occur in 'acute,' or recent, injuries. Petitioner refers to two articles relating to the effects of toluidine blue dye and the prevalence of genital injury resulting from sexual assaults to indicate how an expert witness might have testified. Specifically, Petitioner cites to portions of the articles stating that some sexual assault victims, examined seventy-two hours after the assault, had vulvo-vaginal injuries, and that toluidine blue dye can adhere to an injury forty-eight hours after the injury occurred. Based on this timeline, Petitioner argues that '[t]his evidence would establish that the microscopic abrasion occurred prior to the alleged assault committed by the Defendant, and supported [B.R.]'s testimony that no penetration occurred.'
>
> However, Petitioner's argument is unsupported. First, assuming an expert witness secured by trial counsel would have testified consistent with the articles referenced by Petitioner, that testimony would not have contradicted Nurse Crocker's testimony that the dye only adheres to 'acute' injuries. In her testimony, she did not specify how recently an injury must have occurred for her to consider it an 'acute' injury. But more importantly, the fact that genital injuries can be

> observed using toluidine blue dye forty-eight hours after a sexual assault does not establish that the abrasion found on B.R. actually occurred forty-eight hours prior to the examination by Nurse Crocker. It does not, as Petitioner argues, establish that the injury occurred prior to the sexual assault of B.R. In fact, such testimony would have been consistent with the timeline established in the case because the examination occurred within forty-eight hours of the assault.
>
> Expert testimony relating to possible alternative causes of an injury like the one sustained by B.R. would also have been duplicative. Trial counsel was able to elicit testimony from Nurse Crocker that such an injury could also occur as the result of friction or consensual intercourse. Thus, the jury was aware that the injury could have had a cause other than sexual assault.
>
> Moreover, based on the available evidence, as well as the nature of the offense, trial counsel was limited in the inferences she could have drawn from such testimony at trial. Under A.R.S. § 13-1421, commonly known was the 'Rape Shield' statute, trial counsel can introduce evidence of other specific instances of sexual activity showing the source of trauma 'only if an issue in the case and that the inflammatory or prejudicial nature of the evidence does not outweigh the probative value of the evidence.' Trial counsel would have had to first present that evidence at a hearing at which the standard for admissibility of the evidence would be clear and convincing evidence. *Id*. However, Petitioner had no evidence that the victim had engaged in sexual activity with any other person prior to the assault.
>
> In sum, Petitioner fails to show that an expert witness testifying about the use of toluidine blue dye in detecting sexual assault related injuries would have been able to provide any testimony that might have altered the outcome of the trial.

(Doc. 8 at Ex. C. at pp. 5-6.) (Footnotes omitted.) As with Ground One, this Court determines that the state court's analysis contained in its order denying Petitioner's PCR petition is not an unreasonable application of *Strickland*. As such, Petitioner is not entitled to habeas relief on Ground Two of his Petition.

*Ground Three*: Lastly, in Ground Three, Petitioner alleges that his Fifth

Amendment rights were violated when his trial counsel failed to have his trial completed by a particular jury as to Counts 8 and 9 of the Indictment. (Doc. 1 at p. 8.) Under *Strickland*, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by [Petitioner] as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697. "[I]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice…that course should be followed." *Id*. The Ninth Circuit explained, "[i]n short, a court need not address the two *Strickland* prongs in order; if ruling on the prejudice prong more efficiently resolves the case, reaching the deficiency prong is unnecessary." *Andrews*, 798 F.3d at 774.

Here, the Court determines that the trial court did not unreasonably apply *Strickland* when it disposed of Petitioner's IAC claim on the prejudice prong of *Strickland*. In rejecting Petitioner's claim, the trial court reasoned:

> Finally, Petitioner argues that trial counsel was ineffective for failing to inform Petition of his right to have his trial completed by a particular tribunal on counts eight and nine, and for failing to object when the trial court declared a mistrial as to those counts. The Double Jeopardy Clause of the United States Constitution protects a defendant's "valued right to have his trial completed by a particular tribunal." *State v. Reeves*, 233 Ariz. 182, 5, 185, 310 P.3d 970, 973 (2013) (quoting *United States v. Dinitz*, 424 U.S. 600, 606 (1976)). However, it does not prevent the declaration of a mistrial when a jury cannot reach a verdict. *Id*. In that case double jeopardy does not bar retrial. *Richardson v. United States*, 468 U.S. 317, 324-36 (1984).
>
> Here, Petitioner cannot demonstrate that he was prejudiced as a result of trial counsel's conduct. Petitioner argues that because trial counsel did not inform him that he had a right to have this particular jury decide those counts if the jury was not genuinely deadlocked, his agreement to a mistrial did not include those counts. However, jeopardy could continue after the jury was dismissed without returning a verdict on those counts even if Petitioner did not consent if the State demonstrated manifest necessity, which the State may do by demonstrating that the jury is genuinely deadlocked. *See State v.*

*Espinoza*, 233 Ariz. 176, ¶ 9, 310 P.3d 52, 56 (App. 2013). Even if trial counsel had informed Petitioner of his right to have his trial completed by a particular tribunal on counts eight and nine, and he refused to consent to continuing jeopardy on those counts, jeopardy would still have continued when the trial court found manifest necessity because the jury was deadlocked as to all remaining counts, including counts eight and nine.

Nor would the outcome have been different if trial counsel had objected when the trial court declared a mistrial. To the extent that Petitioner argues that the State did not demonstrate manifest necessity because the jury did not specifically state that it was hopelessly deadlocked as to counts eight and nine in its note, the Court of Appeals noted that even though the jury's note did not include counts eight and nine, nothing suggested that those counts were among those on which agreement had been reached, and the trial court asked whether further deliberation would have resulted in acquittals on counts eight and nine. In the second trial, the jury found Petitioner guilty on all remaining counts.

'If counsel is charged with multiple errors at trial, absence of prejudice is not established by demonstrating that no single error considered alone significantly impaired the defense prejudice may result from the cumulative impact of multiple deficiencies.' *Cooper v. Fitzharris*, 586 F.2d 1325, 1333 (9th Cir. 1978). However, even if all of the errors alleged by Petitioner were remedied to Petitioner's satisfaction, the Court finds that there is not a reasonable probability that the outcome would have been altered.

Petitioner does not argue that trial counsel's conduct prejudiced him as to all counts against him. Rather, Petition focuses on count one, related to B.R., and counts eight and nine, related to C.M. Regarding count one, even if trial counsel's alleged errors were fixed, not only would it not have resulted in the admission of new exculpatory evidence not originally before the trial court and the jury, but the State would likely have introduced Petitioner's own inculpatory statement to police. Furthermore, the alleged errors related to count one and the alleged errors related to counts eight and nine would not have impacted each other as they pertained to separate victims and separate stages of the trial.

(Doc. 1 at Ex. C at pp. 6-8.)

The state court's application of *Strickland* in rejecting Petitioner's IAC claim was not an unreasonable application of federal law. Accordingly, Petitioner is not entitled to habeas relief on Ground Three of his Petition.

In sum, Petitioner is not entitled to relief on any of the three grounds for relief asserted in his Petition.

**Recommendation**

Based on the foregoing, the Magistrate Judge recommends the District Court **DISMISS** the Petition for Writ of Habeas Corpus.

Pursuant to Federal Rule of Civil Procedure 72(b)(2), any party may serve and file written objections within fourteen days of being served with a copy of the Report and Recommendation. A party may respond to the other party's objections within fourteen days. No reply brief shall be filed on objections unless leave is granted by the district court. If objections are not timely filed, they may be deemed waived. If objections are filed, the parties should use the following case number: **16-CV-0337-JAS**.

Dated this 20th day of November, 2017.

Honorable D. Thomas Ferraro
United States Magistrate Judge